# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

vs.

DENNIS SMITH,         CRIMINAL ACTION NO. 2:13CR46
   Defendant.

## REPORT AND RECOMMENDATION/OPINION

On the 16th day of December 2013, came the defendant, Dennis Smith, in person and through counsel, Brian J. Kornbrath, and also came the United States by its Assistant United States Attorney, Andrew Cogar, for a hearing on Defendant's Motion to Suppress Evidence [Docket Entry 17]. The United States filed its Response to the Motion on December 12, 2013 [Docket Entry 25].

Neither party presented evidence or testimony at the hearing. Both parties agree there is no dispute regarding the facts, and the sole issues to be decided are legal. The undersigned therefore considers the matter on the parties' briefs and arguments.

## I. Procedural History

Defendant Smith was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on November 19, 2013. Smith is the sole defendant in a six-count Indictment charging him with Attempt to Manufacture Methamphetamine (Count One); Possession of Materials to be Used in the Manufacture of Methamphetamine (Count Two); Possession of Pseudoephedrine to be Used in the Manufacture of Methamphetamine (Counts Three - Five); and Maintaining a Drug-Involved Premises (Count Six)[Docket Entry 1]. An arrest warrant was issued on November 19, 2013, by United States Magistrate Judge James E. Seibert [Docket Entry 3]. Defendant appeared before the undersigned for Arraignment on December 2, 2013, at which time he entered a plea of "Not Guilty" to all counts.

## II. Facts

There is no dispute regarding the facts, which are as follows:

On September 9, 2013, West Virginia State Trooper K. J. Varner executed an arrest warrant on Defendant at Defendant's home in Upper Tract, West Virginia, for an unrelated harassment allegation. Trooper Varner took Defendant into custody and conducted a protective pat-down. He felt multiple items in one of Defendant's pockets. Defendant stated there were only keys in that pocket. Trooper Varner then retrieved a set of keys and a small cylindrical container from the pocket. He opened the container, finding a clear plastic bag with a white, powdery substance inside. Trooper Varner asked Defendant, "What's this?" to which Defendant allegedly replied, "It's meth [methamphetamine]." Trooper Varner had not advised Defendant of his Miranda[1] rights at the time of this question and response.

Later that day, Trooper Varner conducted a search of the National Precursor Log Exchange ("NPLEx"), which is a database of pseudoephedrine purchases by individuals. The NPLEx database indicated Defendant had purchased a pseudoephedrine product six times over a three-month period.

Trooper Varner then requested a search warrant for Defendant's residence from a State Magistrate. The affidavit in support of the search warrant provides, in pertinent part:

> While patting down Mr. Smith's front-right pocket, this officer felt from the outside multiple items within the pocket. Mr. Smith advised there were only keys within the pocket. This officer retrieved said keys and a small, white in color, cylindrical container with a screw-off cap. The officer observed within the container a clear cellophane bag containing a white in color, powder-like substance. This officer inquired about the substance to which he replied, "It's Meth," (methamphetamine).
>
> At approximately 1310 hours, this officer utilized the National Precursor Log Exchange (NPLEX), a database utilized to discover Pseudoephedrine purchases by

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

an individual. This officer searched said database for Dennis Lynn Smith, resident of Upper Tract, West Virginia and determined within the past thirty (30) days, he purchased 7.2 grams of Pseudoephedrine products, a precursor to manufacture methamphetamine, on the dates of September 5, 2013 and August 16, 2013, in Harrisonburg, Virginia.

Property to be seized pursuant to the search warrant included any controlled substances, in particular methamphetamine; financial and business records; items relating to domestic or foreign travel; items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment or expenditure of money; photographs, in particular photographs of co-conspirators, of assets and/or of controlled substances, in particular methamphetamine; paraphernalia for use, packaging, cutting, weighing, and distributing methamphetamine and marijuana; indicia of occupancy; any and all other material evidence of violation of West Virginia Criminal Code or United States Criminal Code (Possession with Intent to distribute and distribution of controlled substances, in particular methamphetamine, Interstate transportation in aid of racketeering; any firearms; communications devices and evidence regarding communications; safes or other such items secured by lock; any and all items used for and/or with the manufacture process of methamphetamine, including but not limited to, pseudoephedrine and/or all of it's (sic) derivatives, lithium, lithium batteries, packaging for said items or any other items which have been or could be used for the manufacture of methamphetamine.

The State Magistrate issued the search warrant. State Police executed the search warrant the same day, seizing items allegedly consistent with in the manufacture of methamphetamine.

### III. Contentions of the Parties

Defendant requests the Court suppress all evidence seized from the search of his residence, as well as any statement he made to police based on the following arguments:

1) The search warrant was illegal and unconstitutional because:

   a) The search warrant application failed to establish probable cause to search defendant's residence and

   b) The good faith exception to the exclusionary rule does not apply because the affidavit in support of the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

2) The incriminating statement should be redacted from the search warrant application because:

   a) Defendant was in police custody at the time he allegedly made the statement in response to a question asked by police;

   b) Police failed to advise Defendant of his Miranda rights prior to the question and response.

3) There was no nexus between the alleged criminal conduct and the place to be searched because Defendant, at most, was found with a small quantity of white powder, and had purchased two boxes of pseudoephedrine products within 20 days.

4) The "items to be seized" section of the search warrant application is overly broad in the sense that it requests authority to search for numerous items associated with drug trafficking activity.

The United States responds that the Court should deny the motion to suppress in its entirety because:

1) Defendant's incriminating admission was subject to Miranda's public safety exception and

2) In any event, the search warrant affidavit sufficiently established probable cause.

## IV. Discussion

**A. The Unwarned Statement**

The undersigned first addresses whether the Supreme Court's ruling in <u>Miranda</u> applies to the facts in the present case. The Fifth Amendment to the Constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend V. This privilege is not limited to courtroom proceedings, but attaches when a defendant is subject to custodial interrogation. <u>Miranda</u>, <u>supra</u> at 467-468, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "'[T]he prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" <u>United States v. Jamison</u>, 509 F.3d 623, 628 (4th Cir. 2007)(quoting <u>Miranda</u>, <u>supra</u>, at 444). "Custodial interrogation 'mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" <u>Id.</u>

The Government does not contest that Defendant was in custody, and the undersigned finds he was in custody at the time he made the statement at issue. The Government contends that "the isolated question about the contents of the container in the defendant's pocket does not constitute 'interrogation' for purposes of <u>Miranda</u> warnings," citing <u>United States v. Woods</u>, 711 F.3d 737 (6th Cir. 2013).

In <u>Rhode Island v. Innis</u>, the Supreme Court defined "interrogation" as "words or actions on the part of the police (other than those normally incident to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). The Government cites <u>Woods</u> for the proposition that Trooper Varner's question "was not an investigatory question or otherwise calculated to elicit an

5

incriminating response, but rather a natural and automatic response to the unfolding events during the normal course of an arrest." Woods is distinguishable from the present case, however. The officer in Woods "was lawfully patting down Woods and, while doing so, came across a hard object in Wood's pocket that he could not identify. He then asked Woods what the object was. The Court found that to ask 'What's that?' or 'What's in your pocket?' in such a situation is essentially an automatic, reflexive question directed at ascertaining the identity of an object that is legitimately within the officer's power to examine as part of a search incident to an arrest, and as such is 'normally attendant' to an arrest." The instant case is very similar to the facts and issue the Fifth Circuit addressed in Harryman v. Estelle, 616 F.2d 870 (5th Cir. 1980). In this case Officer Varner found the container with the white powder in it in Defendant's pants pocket and asked, "What's this?" to which Defendant responded, "It's meth." In Harryman during a search of the defendant pursuant to arrest, an officer found a condom containing a white powdered substance tucked in the back of the defendant's waistband. Prior to advising the defendant of his Miranda rights, the officer exclaimed, "What is this?" to which the defendant responded, "Oh, you know what it is. It is heroin." The Fifth Circuit held the question constituted interrogation prohibited by Miranda, expressly rejecting the contention of the state that the statement of the officer was an exclamation of surprise, and not the type of questioning that Miranda was designed to control. Accord Jacobs v. Singletary, 952 F.2d 1282 (11th Cir. 1992)(rejecting the State's attempt to graft a "rhetorical question" exception to the Miranda rule). In an unpublished case in the Southern District of New York, United States v. Anderson (S.D.N.Y. 2005), an officer searched the defendant's bag and found what appeared to be meth, and asked the defendant, "What is this?" The defendant replied that he had found the narcotics in the apartment while cleaning up. The court noted that the question,

6

"What is this?" was interrogation and the defendant's response would be inadmissible if the government intended to use it. In the instant case, Trooper Varner's question, "What's this?" came only after he had already patted down Defendant, removed the container from Defendant's pocket, opened it, and seen its contents– a clear baggie containing a white powder. Under those facts, the undersigned finds, "What's this?" was an express question that the officer should have known was reasonably likely to elicit an incriminating response from Defendant. The undersigned therefore finds the question was an "interrogation" for purposes of Miranda warnings.

The U.S. Supreme Court held in Miranda, that "the possibility of coercion inherent in custodial interrogations unacceptably raise[d] the risk that a suspect's privilege against self-incrimination might be violated." U.S. v Patane, 542 US. 630, 124 S. Ct. 2620, 159 L.Ed.2d 667 (2004)("To protect against this danger, the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief.") The Government argues that, even if it does constitute "interrogation," Defendant's statement is admissible pursuant to Miranda's public safety exception, citing New York v. Quarles, 467 U.S. 649 (1984). In Quarles, the Supreme Court found a "public safety" exception to Miranda, finding that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657. Significantly, in Quarles, police had discovered a rape suspect wearing a shoulder holster which was then empty. After handcuffing him, an officer asked him where the gun was and the defendant responded, "the gun is over there." The lower court excluded the defendant's statement as well as the gun itself at trial because the suspect had not yet been given his Miranda rights. The Supreme Court stated that the police, "in the very act of apprehending a

7

suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." There is no such danger to the public in the case at bar.

In United States v. Cox, 955 F.2d 42 (4th Cir. 1992)(unpublished), cited by the Government, the Fourth Circuit stated "police officers need not give *Miranda* warnings where questions could reasonably be said to have been prompted by concern for 'public safety.'" The officers in that case had found drug paraphernalia, including syringes, a "cooker" used to heat heroin, and water to use for injections in Cox's car during a traffic stop. They asked him if he was "a heroin user" and Cox said he was. The officer testified that he posed the question to Cox "for my own concern and safety." The Fourth Circuit found that "[o]nce the officers discovered the drug paraphernalia, it was reasonable for them to inquire about Cox's drug use since drug users often act irrationally." The undersigned first notes that Cox is an unpublished decision which, despite having been decided more than twenty years ago, has not been cited for the purpose at issue by any court.[2] Second, the Fourth Circuit stated that Cox had not preserved the issue of his un-Mirandized questioning for review. He never mentioned the alleged violation at his suppression hearing, nor did he object when the officer

---

[2]The sole citations to Cox on the issue of Miranda were in two law review articles, one a 1997 Baylor Law Review article, The Legacy of Quarles: A Summary of the Public Safety Exception to Miranda in the Federal Courts, 49 Baylor L. Rev. 1107 (1997). That article expressly cited Cox as having "considered what is possibly the least plausible source of danger yet contemplated in a Quarles setting," and stated that the court's reasons "extends the public safety exception too far."

8

testified at trial about his answer to the question at issue. As the Fourth Circuit held, "Therefore, this is the first time the issue has been raised and should be dismissed on this ground alone." Third, in Cox, the officer took the stand and testified that he posed the question "for [his] own concern and safety." In the case at bar, no testimony was offered. Finally, the Fourth Circuit found that, even if there had been a Miranda violation, the admission into evidence and Cox's response was harmless error. The case is unpublished and the discussion of the Miranda issue is clearly dicta as well as not being precisely on point. Although the questions appear similar, the question "Are you a heroin user?" is not the same as the question "What's this?" Accordingly the undersigned accords *Cox* no weight as regards the facts of this case.

The undersigned finds on the facts of this case, that the question "What's this?" constituted interrogation and further finds the public safety exception to Miranda does not apply. The statement is therefore inadmissible in the Government's case in chief.

The statement may be used on cross-examination to impeach Defendant if he chooses to testify, however. "The shield provided by *Miranda* cannot be perverted into a license to use perjury and avoid the traditional truth-testing devices of the adversary process." United States v. Gullett, 75 F.3d 941 (4th Cir. 1996).

The Court is left with the question of whether the Miranda violation requires suppression of the evidence seized as a result of the search warrant. The undersigned finds it does not. In United States v. Sterling, 283 F.3d 216 (4th Cir. 2002) cert. denied, 536 U.S. 931 (2002), the Fourth Circuit reaffirmed its holding that the "fruit of the poisonous tree" doctrine does not extend to physical evidence discovered as a result of statements obtained in violation of Miranda. Id. at 218 (citing United States v. Elie, 111 F.3d 1135 (4th Cir. 1997). In United States v. Patane, the U.S. Supreme

9

Court noted a split in the Courts of Appeals on the issue. 542 U.S. 630, 124 S. Ct. 2620, 159 L.Ed.2d 667 (2004). The Court first framed the issue as follows:

> In this case we must decide whether a failure to give a suspect the warnings prescribed by *Miranda v. Arizona* . . . requires suppression of the physical fruits of the suspect's unwarned but voluntary statements.

The Court then held:

> Because the *Miranda* rule protects against violations of the Self-Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements, we answer the question presented in the negative.

### B. Probable Cause

Having found the Miranda violation does not require the suppression of physical evidence, the undersigned next addresses Defendant's argument that probable cause does not support the issuance of the search warrant. The search warrant affidavit provides as follows:

> While patting down Mr. Smith's front-right pocket, this officer felt from the outside multiple items within the pocket. Mr. Smith advised there were only keys within the pocket. This officer retrieved said keys and a small, white in color, cylindrical container with a screw-off cap. The officer observed within the container a clear cellophane bag containing a white in color, powder-like substance. This officer inquired about the substance to which he replied, "It's Meth," (methamphetamine).
>
> At approximately 1310 hours, this officer utilized the National Precursor Log Exchange (NPLEX), a database utilized to discover Pseudoephedrine purchases by an individual. This officer searched said database for Dennis Lynn Smith, resident of Upper Tract, West Virginia and determined within the past thirty (30) days, he purchased 7.2 grams of Pseudoephedrine products, a precursor to manufacture methamphetamine, on the dates of September 5, 2013 and August 16, 2013, in Harrisonburg, Virginia.

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379,

63 L.Ed.2d 639 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972)). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

> The Fourth Amendment to the Constitution of the United States provides:
>
> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized. There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. *See United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances.

*See Illinois v. Gates*, 462 U.S. 213 (1983).

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996). Therefore, in determining the validity of the search warrant in this case based on its alleged insufficiency, the Court limits itself to the four corners of the affidavit of Trooper Varner, as presented to Magistrate Puffenberger, there being no evidence that anything else was presented to the magistrate. The determination of whether Magistrate Puffenberger had probable cause to issue the warrant to search the residence is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair

11

probability that contraband or evidence of a crime" would be found in Defendant's residence? Illinois v. Gates, 462 U.S. 213, 238 (1983).

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It is incumbent upon this court as the reviewing court to apply the "totality of circumstances" test to determine whether that which was presented to Magistrate Puffenberger supported the issuance of the search warrant. Id.

The information presented to Magistrate Puffenberger in this case included: 1) Defendant was arrested in his home on unrelated charges; 2) during a pat-down search, the officer felt multiple items in Defendant's pocket; 3) Defendant told him there were only keys in his pocket; 3) the officer then removed keys as well as a container from that same pocket; 4) the officer opened the container, observing a white powdery substance in a cellophane bag inside; 5) the officer inquired about the substance and the Defendant then admitted that the substance in the container was methamphetamine; 5) a search of the NPLEx indicated Defendant had purchased pseudoephedrine products on two occasions in 20 days; 6) the second of the two purchases occurred only four days prior to Defendant admitting being in possession of methamphetamine; and 7) the purchases were made in another state (Virginia).

### C. Nexus with Defendant's Residence

Defendant further argues that there was no nexus between the alleged criminal misconduct and the place to be searched. To pass constitutional muster there must be a sufficient nexus between the criminal conduct, the items to be seized, and the place to be searched. See United States v. Anderson, 851 F.2d 727 (4th Cir. 1988). "[T]he crucial element is not whether the target of the search

12

is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." U.S. v. Lalor, 996 F.2d 1578 (4th Cir. 1993). Defendant argues:

> At best, the defendant was found with a small quantity of white powder. And, over a 20 day period (from August 16, 2013 to September 5, 2013) the defendant purchased two boxes of cold pills containing Pseudoephedrine in Virginia. It requires speculation and conjecture to conclude that the defendant himself was involved in the actual manufacture of methamphetamine or that a process to manufacture methamphetamine was conducted inside defendant's residence as opposed to elsewhere.

(Defendant's Motion at paragraph 9).

Whether or not there is a sufficient nexus established between the criminal conduct and the residence is determined on a case-by-case basis. In Anderson, the court adopted the rule that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." Anderson, supra, at 729. The court held that probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location. Id.

Here, the affidavit states that Defendant was found, in his residence, with methamphetamine. The affidavit further states he had purchased pseudoephedrine twice within 20 days, the latter time being only four days prior to his possession of the meth. Both purchases were made out-of-state. From those circumstances the magistrate could infer probable cause and from the nature of the items to be seized could infer they would be found in Defendant's residence.

The undersigned finds, from a totality of the evidence presented to the magistrate, that there was a "fair probability that contraband or evidence of a crime" would be found in Defendant's residence. Gates, supra.

## D. The Leon Good Faith Exception.

Even if the Court were to find probable cause did not support the issuance of the search warrant, the undersigned finds the "good faith exception" applies. In United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L.Ed 2d 677 (1984), the United States Supreme Court held there is a "good faith" exception to the exclusionary rule. The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith

14

exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

> The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:
>
> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be

15

searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find that any of the four situations which would make the good faith exception inapplicable exist in this case. The undersigned finds nothing in the affidavit false or misleading. There is also no indication that the State Magistrate "wholly abandoned his detached and neutral judicial role." Further, a review of the affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable." As grounds for the search, Trooper Varner stated that Defendant had methamphetamine in his pocket; had made two purchases of pseudoephedrine within the past 20 days, one only 4 days earlier than the search; and that he purchased the pseudoephedrine in another state. This is not a case of a "bare bones" affidavit, relying on anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). Although the affidavit may consist of weak inferences, the undersigned does not find the affidavit to be "bare bones" as described in Wilhelm.

In determining whether the officers' reliance on a warrant was reasonable, the Court is "not limited to consideration of only the facts appearing on the face of the affidavit." United States v. Perez, 393 F.3d 457 (4th Cir. 2004). Rather, the Court "may consider information conveyed to the magistrate but not contained in the affidavit as well as uncontroverted facts known to the officer but inadvertently not presented to the magistrate." United States v. Brown, No. 11-4957, 2012 WL 1949320, at *2 (4th Cir. May 31, 2012)(citing United States v. McKenzie-Gude, 671 F.3d 452 (4th

16

Cir. 2011)).

The Government represents in its brief that Trooper Varner had other information regarding Defendant that he did not include in his affidavit. First, he knew that Defendant had been regularly purchasing the same pseudoephedrine product in West Virginia and Virginia since June 2013, and second he knew the initial charge against Defendant was a harassment charge based on his confronting his ex-wife's boyfriend for referring to him as a "crack head. In Bynum, the Fourth Circuit discussed the situation where information known to the affiant was omitted from his affidavit:

> If the district court relied on the absence of this information in refusing to apply *Leon's* good faith exception, that reliance was in error. When, as here, the affidavit itself provides information not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," a court should not refuse to apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known to him *supporting* a finding of probable cause.

Bynum, 293 F.3d at 199 (internal citations omitted) (emphasis in original).

Finally, the undersigned finds the warrant was not "so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid." The affidavit states with particularity the residence to be searched and the items to be seized.

The undersigned finds Leon also applies to Defendant's argument that the "items to be seized" section of the application is overly broad "in the sense that it requests authority to search for numerous items only associated with drug trafficking activity. Nothing in the search warrant application supports a claim that drug trafficking activity took place." The argument is best read to state that there was no probable cause to search for items related to drug trafficking. Again, even if there were not probable cause to search for those particular items, it was not objectively

17

unreasonable for Trooper Varner to rely on the search warrant issued by the magistrate. Further, as already stated, Trooper Varner was aware that Defendant had been regularly making purchases of pseudoephedrine, both in West Virginia and Virginia.

The Fourth Circuit has also cited Leon in the context of a nexus argument. In Lalor, the court found the warrant application deficient for failure to establish a nexus between the drug activity and the location that was searched. "Nevertheless, the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable." Lalor at 1583.

In a recent case in this District, United States District Judge Irene M. Keeley adopted the Report and Recommendation of the undersigned, rejecting a defendant's argument that the affidavit's failure to explicitly correlate his residence with the criminal conduct rendered the officer's reliance on the warrant objectively unreasonable. This Court stated:

> Importantly, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would like keep sch evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). Fourth Circuit precedent permits issuing judges "to make reasonable inferences that people store contraband in their homes." McKenzie-Gude, 671 F.3d at 459 n. 2. . . .
>
> Even where the affidavit fails to provide a demonstrated nexus between the location to be searched and the defendant's criminal activity, the *Leon* good faith exception is still applicable. *U.S. v. Moore*, No. 11-4623, 2012 WL 1406253, at *5 (4th Cir. Apr. 24, 2012); *see also United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993)). Given the reasonable inference [] that people store contraband in their homes," *McKenzie-Gude*, 671 F.3d at 459 n. 2, the officers' good faith belief that Hurst stored his marijuana plants at his residence is not unreasonable. A such, even if the affidavit in this case is deficient for failing to explicitly establish a nexus between the criminal conduct and the defendant's residence, it "is not so lacking in probable cause that the officer's reliance on it was objectively unreasonable." *Lalor*, 996 F.2d at 1583.

United States v. Hurst, 2012 WL 3079250 (N.D.W.Va., July 30, 2012)(Cr. No. 1:12CR19).

## V. CONCLUSION

The undersigned finds, from a totality of the evidence presented to the magistrate, that there was a "fair probability that contraband or evidence of a crime" would be found in Defendant's residence. Gates, supra. The undersigned further finds that, even if the Court were to find probable cause did not support the issuance of the search warrant, the "good faith exception" applies.

The undersigned concludes that the statement made by Defendant in response to Trooper Varner's question, "What's this?" is inadmissible in the Government's case-in-chief, but is admissible for impeachment purposes if Defendant testified. Further, the physical evidence obtained is admissible in the trial of this case.

## VI. RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Motion To Suppress Evidence [Docket Entry 17], be **GRANTED** as to Defendant's statement "It's meth," but be **DENIED** as regards the items seized pursuant to the search of Defendant's residence.

Any party may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to

counsel of record.

      Respectfully submitted this 7th day of January, 2014.

                    s/ *John S. Kaull*
                    **JOHN S. KAULL**
                    **UNITED STATES MAGISTRATE JUDGE**